FILED

September 14 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0552

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 200

STATE OF MONTANA,

>Plaintiff and Appellee,

v.

TYSON LEE HAPPEL,

>Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 08-0718
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender; Helena, Montana

>For Appellee:

>Steve Bullock, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General; Helena, Montana

>Dennis Paxinos, Yellowstone County Attorney; David Carter, Deputy
County Attorney; Billings, Montana

Submitted on Briefs:  August 10, 2010

Decided:  September 14, 2010

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Tyson Lee Happel appeals from the judgment and order entered by the Thirteenth Judicial District Court, Yellowstone County, sentencing him for the crimes of criminal endangerment and felony theft. He challenges the disposition of his motion for appointment of new counsel and to withdraw his guilty pleas. We affirm.

¶2 We consider the following issue:

¶3 *Did the District Court err when inquiring into Happel's complaint that defense counsel had rendered ineffective assistance?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On January 5, 2009, the State charged Happel for assault with a weapon, two counts of tampering with physical evidence, felony theft, and sought designation of Happel as a persistent felony offender for his involvement in an altercation outside a Billings bar. The State alleged that, following removal of Happel's companion from the bar by a bouncer, a fight ensued and Happel attacked a party aiding the bouncer, stabbing the party multiple times in the back. Happel then handed his knife to a woman bystander and fled the scene in a black pickup truck, which police determined had been stolen.

¶5 After police apprehended Happel, Moira D'Alton was assigned as his counsel. Happel initially entered not guilty pleas to all counts, and D'Alton filed a notice of intention to interpose the defense of justifiable use of force and a notice to raise defense of a third person as an affirmative defense. Later, a plea agreement was reached wherein the State dismissed the two tampering charges and Happel agreed to plead guilty to criminal endangerment, reduced from assault with a weapon, and theft.

2

¶6 Happel initialed each page of the written plea agreement and at the end affirmed he was "satisfied with my attorney's services and advice" and signed his name. The agreement stated, in pertinent part:

> This plea is being voluntarily made and not the result of force, threat, or coercion. I acknowledge that my attorney has explained to me and advised me of the following and I fully understand the following:
>
> .   .   .
>
> There is a 1 (c) plea agreement in this case. The State and [Happel] will jointly recommend the sentence of:
>
> Count I:    Criminal Endangerment: Ten (10) years to Montana State Prison with Three (3) suspended, as Persistent Felony Offender, $ 2000 fine, and reasonable restitution
>
> Count II:    Theft (Felony): Ten (10) years to Montana State Prison with Three (3) suspended, as Persistent Felony Offender, $ 2000 fine, concurrent with count I
>
> Defendant may argue for a Boot Camp designation from the Court.
>
> I further understand that if the plea is rejected by the Court that I will not be entitled to withdraw my plea of Guilty as a matter of law. [Emphasis omitted.]

The plea agreement also stated that the State intended to pursue designation of Happel as a persistent felony offender and set forth the maximum sentences which could be imposed upon Happel as a persistent offender for each charge:

> The State has filed Intent to Have Defendant Designated a Persistent Felony Offender, [and] pursuant to [§] 46-18-502(1)[,] MCA, Defendant could be sentenced to a term of not less than 5 years and not more [than] 100 years together with a fine of $ 50,000; and not less than 10 years and not more [than] 100 years together with a fine of $ 50,000 pursuant to [§] 46-18-502(2)[,] MCA. [Emphasis omitted.]

3

¶7 At the change of plea hearing, the following exchanges occurred during the colloquy between the District Court and Happel, who was attended by D'Alton:

> THE COURT: I've been provided with an Acknowledgment of Waiver of Rights and Plea Agreement, did you sign that document?
>
> MR. HAPPEL: Yes ma'am.[1]
>
> THE COURT: Did you have an opportunity to go through the document with Ms. D'Alton?
>
> MR. HAPPEL: Yes.
>
> .   .   .
>
> THE COURT: Do you understand that the State has filed a notice to pursue you as a persistent felony offender which would make the maximum possible sentence that you face on each of these felony charges 100 years?
>
> MR. HAPPEL: Yes, ma'am.
>
> .   .   .
>
> THE COURT: And do you understand that that agreement is not binding on the Court, and if the Court were to sentence you more severely, that would not be grounds to withdraw your guilty pleas?
>
> MR. HAPPEL: Yes, ma'am.

Happel then acknowledged his satisfaction with D'Alton's advice and services, the court accepted his guilty pleas, and the matter was set for sentencing.

¶8 On April 25, 2009, Happel sent a six-page, handwritten, self-represented motion seeking withdrawal of his guilty pleas and appointment of new counsel to the county attorney. Happel's letter asserted that his pleas had been entered because of the ineffective assistance of his counsel, articulating that D'Alton had failed to advise him of

---

[1] The change of plea hearing was conducted by the Hon. Susan P. Watters, District Court Judge. Sentence was later imposed by the Hon. Gregory R. Todd, District Court Judge.

"the consequences of a (1)(c) plea-agreement" as being nonbinding upon the court and had failed to advise him that he would be sentenced as a persistent felony offender.

¶9 Because Happel had not filed his motion, the District Court initiated the sentencing hearing as scheduled on May 11, unaware of it. At the beginning of the hearing, D'Alton brought Happel's motion to the attention of the court. The court asked for a response from the prosecutor, who argued that Happel's allegations were "completely contrary to the entire record as well as specifically his written acknowledgment and waiver of rights . . . ." The court then asked D'Alton for a response. D'Alton replied, "Well, Your Honor, I'm not really sure what to say. This is not a Finley hearing as far as I can tell, so I don't think I can respond to Mr. Happel's allegations." The District Court then stated:

> [T]here's six pages here of this motion that I've just received.
> So I guess what I'm going to do is I'm going to continue the sentencing, but I will review the motion, and then I will determine if we need a hearing, and if we do, when. Because I think I have the authority to determine if it meets the initial criteria for the motion. So we'll continue the hearing . . . .

¶10 At a hearing on May 22, 2009, the District Court stated its conclusion that there were "no seemingly substantial" complaints raised and denied Happel's motions. On June 22, 2009, the court sentenced Happel consistent with the terms of the plea agreement and granted Happel's request for placement in boot camp. Happel appeals.

## STANDARD OF REVIEW

¶11 We review a district court's denial of a request for appointment of new counsel for an abuse of discretion. *State v. Gallagher* (*Gallagher I*), 1998 MT 70, ¶ 10, 288 Mont.

180, 955 P.2d 1371; *State v. Rose*, 2009 MT 4, ¶ 95, 348 Mont. 291, 202 P.3d 749; *Halley v. State*, 2008 MT 193, ¶ 11, 344 Mont. 37, 186 P.3d 859; *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, 168 P.3d 685.

## DISCUSSION

¶12 ***Did the District Court err when inquiring into Happel's complaint that defense counsel had rendered ineffective assistance?***

¶13 Happel challenges the District Court's "initial inquiry" into his request for appointment of new counsel, which, he argues, must "[a]t a minimum" provide opportunity for the defendant to explain his concerns and defense counsel to respond. The State argues the District Court conducted an adequate inquiry based upon its review of Happel's motion and the record, and correctly determined that Happel had failed to make a "seemingly substantial complaint" about his counsel which would have necessitated a formal hearing. Alternatively, the State argues that Happel did not have a basis to withdraw his guilty plea, thereby rendering harmless any shortcomings in the District Court's initial inquiry.

¶14 Criminal defendants have a fundamental right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Meredith*, 2010 MT 27, ¶ 50, 355 Mont. 148, 226 P.3d 571. If a defendant asserts denial of effective assistance and requests appointment of new counsel, a district court must conduct an "adequate initial inquiry" to determine whether the defendant's claim is "seemingly substantial." *Gallagher I*, ¶ 15; *Racz*, ¶ 19; *State v. Molder*, 2007 MT 41, ¶¶ 31, 33, 336 Mont. 91, 152 P.3d 722. We have explained that "the threshold issue to determine whether a complaint

6

is substantial is not whether counsel was ineffective, but rather whether the district court made an adequate inquiry into the defendant's claim." *State v. Gazda*, 2003 MT 350, ¶ 30, 318 Mont. 516, 82 P.3d 20 (citing *State v. Weaver*, 276 Mont. 505, 511, 917 P.2d 437, 441 (1996)). Generally, a district court conducts an adequate inquiry when it analyzes "the [defendant's] complaints and made some sort of critical analysis at the time the motion was filed." *State v. Finley*, 276 Mont. 126, 143, 915 P.2d 208, 219 (1996), *overruled on other grounds by State v. Gallagher* (*Gallagher II*), 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. We have explained that "an initial inquiry may be adequate where the court 'considered the defendant's factual complaints together with counsel's specific explanations addressing the complaints.' " *Gallagher I*, ¶ 15 (quoting *City of Billings v. Smith*, 281 Mont. 133, 136-37, 932 P.2d 1058, 1060 (1997)). In contrast, we have explained that if a district court fails to conduct "even a cursory inquiry," such an effort is inadequate and justifies remand of the case for further proceedings. *See e.g. Weaver*, 276 Mont. at 511-12, 917 P.2d at 441-42; *City of Billings*, 281 Mont. at 139-41, 932 P.2d at 1061-63; *State v. Enright*, 233 Mont. 225, 229, 758 P.2d 779, 782 (1988), *overruled on other grounds by Gallagher II*, ¶ 21. If a district court's initial inquiry reveals a seemingly substantial complaint, the court must hold a hearing to address the validity of the complaints, and appoint separate counsel to represent the defendant. *Gallagher I*, ¶ 15; *Gazda*, ¶ 32. If the claim is not seemingly substantial, a hearing is unnecessary. *Weaver*, 276 Mont. at 512, 917 P.2d at 442.

7

¶15 Happel's motion was six pages in length and claimed ineffectiveness of his counsel upon two specified grounds. First, he argued that his counsel had failed to explain the application of § 46-12-211(1)(c), MCA, under which the plea agreement was not binding upon the sentencing court and his pleas could not be withdrawn should the District Court reject the agreement. Secondly, Happel claimed counsel had not explained the application of the persistent felony offender statute and the possible sentence he faced, stating:

> In furtherance appointed counsel has not explained to defendant what the penalty for "persistent felony offender designation" actually encompasses. She failed to notify her client that he was pleading guilty to (2) two P.F.O.'s and exactly what the penalty is therein, pursuant to Mont. Code Ann. § 46.18.502 Subsections (1), and (2), as to what the Court can sentence defendant to if the Court does not accept the non-binding plea-agreement.

¶16 Upon receipt of Happel's motion, the District Court requested comments from counsel in open court and continued the sentencing hearing to undertake review, noting it had "authority to determine if it meets the initial criteria for the motion." The court stated it would "determine if we need a hearing, and, if we do, when." The State filed a point brief arguing that the record contained "conclusive" proof contradicting Happel's two claims. At the next hearing, the District Court denied Happel's motion, stating "there are no seemingly substantial complaints made in the pro se petition that would trigger the need for a hearing. I don't believe he's raised the threshold matters . . . ."

¶17 "Facts are stubborn things." Charles Francis Adams, *The Works of John Adams, Second President of the United States* vol. I, 113 (Little, Brown and Co., 1856) (quoting

8

John Adams, *Argument in Defense of the Soldiers in the Boston Massacre Trials* (Dec. 4, 1770)). The record here contains such stubborn things, directly and completely refuting the factual assertions upon which Happel's ineffectiveness claims were based. Happel claimed ignorance about a "(1)(c)" plea agreement, but the agreement explicitly stated that "[t]here is a 1 (c) plea agreement in this case," and further explained what that language meant—that Happel "understand[s] that if the plea is rejected by the Court that [he] will not be entitled to withdraw [his] plea of Guilty as a matter of law." Happel initialed the page on which this explanation was provided. Then, the District Court confirmed Happel's understanding of this point during the plea colloquy, asking him "do you understand that that agreement is not binding on the Court, and if the Court were to sentence you more severely, that would not be grounds to withdraw your guilty pleas?" Happel responded affirmatively.

¶18    As to Happel's claim that his counsel failed to explain the application of the persistent felony offender statute, the plea agreement explained:

> The State has filed Intent to Have Defendant Designated a Persistent Felony Offender, pursuant to [§] 46-18-502(1)[,] MCA, Defendant could be sentenced to a term of not less than 5 years and not more [than] 100 years together with a fine of $ 50,000; and not less than 10 years and not more [than] 100 years together with a fine of $ 50,000 pursuant to [§] 46-18-502(2)[,] MCA. [Emphasis omitted.]

The plea agreement further explained that the parties would "*jointly recommend*" a persistent felony offender sentence for each offense. (Emphasis added.) Then, the District Court confirmed Happel's understanding of this designation at the change of plea hearing ("Do you understand that the State has filed a notice to pursue you as a persistent

9

felony offender which would make the maximum possible sentence that you face on each of these felony charges 100 years?"), to which Happel answered affirmatively.

¶19    Our cases indicate that, generally, "an initial inquiry may be adequate where the court 'considered the defendant's factual complaints together with counsel's specific explanations addressing the complaints.' " *Gallagher I*, ¶ 15 (quoting *City of Billings*, 281 Mont. at 136-37, 932 P.2d at 1060).   Here, the court asked for defense counsel's response, but counsel declined.   While obtaining defense counsel's explanations as part of an initial inquiry remains the preferable practice, we cannot conclude under the circumstances of this case that the District Court's inquiry was rendered inadequate. Here, the record directly refuted Happel's factual assertions, permitting the District Court to make a "seemingly substantial" determination without further input or inquiry.

¶20    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART

10